ALLIANCE SHIPPERS, INC,                )
                                       )
                                       )   UNITED STATES DISTRICT COURT
                    Plaintiff,         )   DISTRICT OF NEW JERSEY
                                       )
          v.                           )   Civil Action No. 2:10-CV-03729(DMC)(JAD)
                                       )
MIDLAND WEST, INC.,                    )
                                       )
                    Defendant.         )
                                       )
                                       )

---

## MEMORANDUM OF LAW IN SUPPORT OF
## MIDLAND'S MOTION TO DISMISS COMPLAINT

---

GEORGE W. WRIGHT & ASSOCIATES, LLC
Attorneys for Defendant
505 Main Street
Hackensack, New Jersey 07601
(201) 342-8884

On the Brief:

George W. Wright, Esq.
Narinder S. Parmar, Esq.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..............................................................................  ii

PRELIMINARY STATEMENT.......................................................................  1

PROCEDURAL HISTORY..............................................................................  1

STATEMENT OF FACTS................................................................................  3

GOVERNING STATUTES AND RULES..........................................................  4

LEGAL ARGUMENTS....................................................................................  4

POINT I:     ISSUE PRECLUSION BARS THE FILING
            OF THIS ACTION AFTER ITS IDENTICAL
            ACTION WAS DISMISSED BY THE STATE
            COURT FOR LACK OF PERSONAL JURISDICTION........................  6

POINT II:    PLAINTIFF'S COMPLAINT MUST BE DISMISSED
            BECAUSE THE STATE OF NEW JERSEY LACKS
            PERSONAL JURISDICTION OVER DEFENDANT...........................  11

POINT III:   THIS MATTER SHOULD BE DISMISSED BASED
            ON THE DOCTRINE OF FORUM NON CONVENIENS......................  15

POINT IV:    THERE IS NO FEDERAL SUBJECT-MATTER
            JURISDICTION OVER THIS FREIGHT CHARGE SUIT....................  17

CONCLUSION................................................................................................  20

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

Alliance Shippers, Inc. v. Blue Line Distribution, Ltd.,
2010 U.S. Lexis 73959 (D.N.J. 2010)............................................... 7, 8

Alliance Shippers, Inc. v. Starrett, Civil Action No. 10-198-P-H
(D.Me. 2010)............................................................................ 18

Asahi Metal Indus. Co., Ltd. v. Superior Court of California,
480 U.S. 102 (1987)................................................................... 13

Aydel Corporation v. Mecure, 58 N.J. 264 (1971)..................................... 11

Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522 (1931)......... 7

BOC Group, Inc. v. Chevron Chemical Company, L.L.C.,
359 N.J.Super. 135 (App.Div. 2003)................................................ 15

Burger King. Corp. v. Rudzewicz, 471 U.S. 462 (1985)............................ 12

Central Transport Intl. v. Sterling Seating, Inc., 356 F.Supp.2d 786
(E.D.Mich. 2005)...................................................................... 17, 18

CFMT, Inc. v. Steag Microtech, Inc., 965 F. Supp. 561 (D. Del. 1997)............ 9

Civil Southern Factors Corp. v. Bonant, 65 N.J. 329 (1974)....................... 15

D.C. Court of Appeals v. Feldman, 460 U.S. 462, 75 L. Ed. 2d 206,
103 S. Ct. 1303 (1983)............................................................... 19

Eaton v. Weaver Manufacturing Co., 582 F.2d 1250 (10th Cir. 1978)............... 7

Exxon Mobil Corporation v. Saudi Basic Industries Corporation,
544 U.S. 280, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)........................... 19

Federacion De Maestros De Puerto Rico v. Junta De Relaciones
Del Trabajo Del Puerto Rico, 410 F.3d 17 (1st Cir. 2005)........................ 20

First England Funding, L.L.C. v. Aetna Life Insurance & Annuity Co.,
347 N.J.Super. 443 (App.Div. 2002)................................................ 15, 16

GMG Transwest Corp. v. PDK Labs, 2010 U.S. Dist. Lexis 95941
(E.D.N.Y. 2010)............................................................................... 18

Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)...................................... 11, 13

Kitces v. Wood, 917 F.Supp. 338 (D.N.J. 1996)......................................... 6

Lance v. Dennis, 546 U.S. 459, 126 S.Ct. 1198, 163 L.Ed.2d (2006)............... 19

Madan-Russo v. Poasda, 366 N.J.Super. 420 (App.Div. 2004)....................... 16

Mandell v. Bell Atl. Nynex Mobile, 315 N.J.Super. 273 (Law Div. 1997).......... 15

Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373,
84 L. Ed. 2d 274, 105 S. Ct. 1327 (1985).................................................. 9

Matsushita Elec. Industrial Co. v. Epstein, 516 U.S. 367,
134 L. Ed. 2d 6, 116 S. Ct. 873 (1996).................................................... 9

Mayflower Transit, LLC v. Interra Industries, 2008 U.S. Dist.
Lexis 50121 (D.N.J. 2008)................................................................. 17, 18

Max Daetwyler Corp. v. Meyer, 762 F.2d 290, 295 (3d Cir.),
cert. denied, 474 U.S. 980, 106 S. Ct. 383, 88 L. Ed. 2d 336 (1985)................. 8, 11

Metropolitan Life Insurance Company v. Robertson-CECO Corp.,
84 F. 3d 560 (2d Cir. 1996)................................................................. 14

Narco Avionics, Inc. v. Sportsman's Market, Inc., 792 F. Supp. 398
(E.D. Pa. 1992)................................................................................ 9

Old Dominion Freight Line v. Allou Distribs., 86 F.Supp.2d 92
(E.D.N.Y. 2000)............................................................................... 18

Parsons Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 88 L.Ed.2d
877, 106 S. Ct. 768 (1986)................................................................. 9

Rates Technology Inc. v. Nortel Networks Corp., 399 F.3d 1302
(3d Cir. 2005)................................................................................. 10

Reliance Nat. v. Dana Transport, 376 N.J. Super. 537 (App. Div. 2005)............ 11

Rooker v. Fid. Trust Co., 263 U.S. 413, 68 L. Ed. 362, 44 S. Ct. 149 (1923)....... 19

-iii-

Smith v. S&S Dundalk Eng'g Works, Ltd., 139 F. Supp. 2d 610
(D.N.J. 2001)...................................................................... 9

Stranahan Gear Co. v. N.L. Indus., Inc., 800 F.2d 53 (3rd Cir. 1986)................ 11

Tarus v. Borough of Pine Hill, 189 N.J. 497, 916 A.2d 1036 (2007)................ 10

Transit Homes of America v. Homes of Legend, Inc. ("Transit Homes I"),
173 F.Supp.2d 1185 (N.D. Ala. 2001)..................................................... 17

Transit Homes of America v. Homes of Legend, Inc. ("Transit Homes II"),
173 F.Supp.2d 1192 (N.D. Ala. 2001)..................................................... 17, 18

Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106 (1994)........................ 13, 15

World Wide Volkswagen v. Woodson, 444 U.S. 286 (1980)........................ 12

## STATUTES

28 U.S.C. § 1331 ...........................................................  4, 17

28 U.S.C. § 1337....................................................................  4, 17, 18

28 U.S.C. § 1738....................................................................  5

28 U.S.C. § 1927....................................................................  2

49 U .S.C. §10101, et seq............................................................  17

49 U.S.C. §13707....................................................................  5, 18

49 U.S.C. §14101(b)................................................................  17, 18

49 U.S.C. §14706....................................................................  17

## COURT RULES

Fed.R.Civ.P. 12(b)(1), (2) and (6)....................................................  1, 20

New Jersey Court Rule 4:4-4(b)(1)....................................................  11

## PRELIMINARY STATEMENT

This Brief is submitted on behalf of defendant MIDLAND WEST, INC. ("MIDLAND") in support of its motion to dismiss the Complaint on the grounds that plaintiff ALLIANCE SHIPPERS, INC.'s ("ALLIANCE's") action is barred pursuant to (1) Fed.R.Civ.P. 12 (b)(6) by the res judicata doctrine based on the prior jurisdictional dismissal of plaintiff's identical state court action, (2) Fed.R.Civ.P. 12 (b)(2) for lack of personal jurisdiction and (3) Fed.R.Civ.P. 12 (b)(1) for lack of subject-matter jurisdiction. Leave to file this motion was granted by Order, dated December 14, 2010 (Doc. 20).

## PROCEDURAL HISTORY

**A.   State Court Procedural History.**

This case arises from an alleged breach of contract between ALLIANCE and MIDLAND involving claims for payment of freight charges. Plaintiff filed a Complaint in the New Jersey Superior Court, Middlesex County, Docket No. MID-L-2642-09 on or about March 25, 2009 (Exhibit "A" hereto) ("State Court Complaint"). MIDLAND moved to dismiss the action for lack of personal jurisdiction, which motion was granted by the Superior Court by Order, dated June 26, 2009 (Exhibit "B" hereto). On plaintiff's reconsideration motion, the Superior Court issued an Order, dated August 14, 2009 (Exhibit "C" hereto), vacating the June 26 Order and granting plaintiff leave to obtain discovery on the issue of personal jurisdiction over MIDLAND. After MIDLAND responded to Plaintiff's Jurisdictional Interrogatories (Exhibit "D" hereto), defendant again moved to dismiss the action for lack of personal jurisdiction. Plaintiff's State Court Complaint was dismissed by the Superior Court for lack of personal jurisdiction by Order, dated January 8, 2010 (Exhibit "E" hereto).

Plaintiff filed a Notice of Appeal from the January 8, 2010 Order on or about January 28, 2010 (Exhibit "F" hereto), but took no further action.  It withdrew the appeal immediately after filing the instant suit and before its appellate brief was due.

**B.   Federal Court Procedural History.**

The Complaint filed herein on or about July 23, 2010 ("Federal Complaint") (Doc. 1) is entirely duplicative of the State Court Complaint.  An Answer with Counterclaims was filed on behalf of MIDLAND on August 26, 2010 (Doc.6).  At plaintiff's counsel's insistence[1], MIDLAND re-filed its Answer on October 22, 2010 (Doc. 13).

MIDLAND'S Answer (First Affirmative Defense) asserts that the Court lacks personal jurisdiction over MIDLAND, and further asserts (Third Affirmative Defense) that this action is barred by the doctrine of res judicata based on the Superior Court's January 8, 2010 Order dismissing the State Court Complaint.

By letter, dated November 29, 2010, MIDLAND demanded that plaintiff's counsel withdraw the Complaint (Exhibit "G" hereto).  Plaintiff's counsel rejected MIDLAND's demand by reply letter, dated December 2, 2010 (Exhibit "H" hereto).

MIDLAND served a Rule 11 motion on ALLIANCE on December 22, 2010, but ALLIANCE has refused to dismiss the Complaint.  MIDLAND is contemporaneously filing a motion under 28 U.S.C. § 1927 and Fed.R.Civ. P. 11 for filing a duplicative action after the State Court Complaint had already been dismissed.

---

[1] After filing of the Answer, MIDLAND learned that the Clerk had entered a default against MIDLAND and filed a motion to vacate the default.  By Order, dated September 9, 2010, the Court vacated the default (Doc. 11).  Plaintiff's counsel argued that defendant's initial Answer was ineffective because it was filed after the default was entered.

**STATEMENT OF FACTS**

Defendant MIDLAND WEST, INC., ("MIDLAND"), is a California corporation with a principal place of business at 1115 S.Taylor Avenue, Montebello, CA 90640. (Affidavit of Michael Prouty, ¶1). It is a provider of customized transportation logistics solutions. (Prouty Affid., ¶2). MIDLAND has no contacts with the State of New Jersey. (Prouty Affid., ¶3). Specifically, MIDLAND does not own property in New Jersey, nor has it ever owned property or conducted business in New Jersey. Id. It does not know of any of its customers that have a place of business in New Jersey other than plaintiff, ALLIANCE, which now alleges it has a business location in New Jersey. (Prouty Affid., ¶4). MIDLAND has never had any contracts or other business with plaintiff's New Jersey locations. (Prouty Affid., ¶10).

Excluding this action and plaintiff's previous related state court suit, MIDLAND has never been a party to a lawsuit in New Jersey. (Prouty Affid., ¶5). MIDLAND does not have any employees or sales or business agents in New Jersey. (Prouty Affid., ¶6). It has never placed an advertisement in any newspaper, magazine, and/or trade publication and other circulation or media in New Jersey. (Prouty Affid., ¶7). MIDLAND has not attended any trade shows, conventions, seminars, training sessions or any other type of meeting in New Jersey. (Prouty Affid., ¶8).

The only alleged contact MIDLAND has with New Jersey is a registered agent which MIDLAND is statutorily-required to have in all 50 states. (Prouty Affid., ¶9).

Plaintiff has various business offices, including a regional and international operating office located at 6615 East Coast Highway, Suite 100, Long Beach, California and an office located at 5515 South 70th Court, Orlando Park, Illinois 60652. (Prouty Affid., ¶11).

3

The parties' relevant contract was negotiated between plaintiff's representative located in the Chicago area and MIDLAND's representatives located in California. (Prouty Affid., ¶12).The Credit Application and Terms of Payment between the parties was submitted by MIDLAND to plaintiff's representative, Ms. Sherry Jordan, at plaintiff's Illinois office, not to plaintiff's New Jersey office. Id. The parties' relevant contract did not require the transportation of any shipments to or from New Jersey. (Prouty Affid., ¶13). All of the shipments for which plaintiff demands payment from MIDLAND were between points in California and the Chicago area. (Prouty Affid., ¶14). MIDLAND has never requested or provided any services from or to plaintiff's New Jersey office. (Prouty Affid., ¶15).

Being compelled to travel to New Jersey to defend this action would be a great inconvenience to MIDLAND. (Prouty Affid., ¶16). MIDLAND is a small company with only six (6) employees and all of its employees and records are located in California. (Prouty Affid., ¶¶17-18). Plaintiff is a much larger business than MIDLAND and plaintiff has offices throughout the country, including its offices in California and Illinois. (Prouty Affid., ¶19).

## GOVERNING STATUTES AND RULES

### 28 U.S.C. § 1331.  Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

\* \* \*

### 28 U.S.C. § 1337.  Commerce and antitrust regulations; amount in controversy, costs

(a)  The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies:...

\* \* \*

**28 U.S.C. § 1738.   State and territorial statutes and judicial proceedings; full faith and credit.**

The records and judicial proceedings of any court of any such State, Territory or Possession, … shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

\* \* \*

49 USC s 14101(b). Contracts with shippers.

(1) In general. A carrier providing transportation or service subject to jurisdiction under chapter 135 [49 USCS §§ 13501 et seq.] may enter into a contract with a shipper, other than for the movement of household goods described in section 13102(10)(A) [49 USCS § 13102(10)(A)], to provide specified services under specified rates and conditions. If the shipper and carrier, in writing, expressly waive any or all rights and remedies under this part [49 USCS §§ 13101 et seq.] for the transportation covered by the contract, the transportation provided under the contract shall not be subject to the waived rights and remedies and may not be subsequently challenged on the ground that it violates the waived rights and remedies. The parties may not waive the provisions governing registration, insurance, or safety fitness.

(2) **Remedy for breach of contract.** The exclusive remedy for any alleged breach of a contract entered into under this subsection shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree.

\* \* \*

**49 U.S.C. § 13707.**

(a) **Transfer of possession upon payment.**-Except as provided in subsection (b), a carrier providing transportation or service subject to jurisdiction under this part shall give up possession at the destination of the property transported by it only when payment for the transportation or service is made.

5

**(b)Exceptions.--**

**(1) Regulations.-**Under regulations of the Secretary governing the payment for transportation . . . and prevention of discrimination, those carriers may give up possession at destination of property transported by them before payment for the transportation . . . .

## LEGAL ARGUMENTS

### POINT I

### ISSUE PRECLUSION BARS THE FILING OF THIS ACTION AFTER ITS IDENTICAL ACTION WAS DISMISSED BY THE STATE COURT FOR LACK OF PERSONAL JURISDICTION

**A.** **Plaintiff May Not Re-File its Jurisdictionally-Dismissed State Court Complaint.**

In Kitces v. Wood, 917 F.Supp. 338 (D.N.J. 1996), United States District Judge Stephen M. Orlofsky held that a plaintiff whose New Jersey state court action had been dismissed for lack of personal jurisdiction could not re-file the action in federal court. The Court held:

> *The doctrine of collateral estoppel, or issue preclusion, forecloses Plaintiff from prosecuting in this Court an action which is identical to the action dismissed by the Superior Court of New Jersey for lack of personal jurisdiction...*The principles of collateral estoppel apply with equal force to a prior determination by a court that it lacks personal jurisdiction over a party. *Therefore, once a New Jersey state court has concluded that it lacks personal jurisdiction over a party, that jurisdictional issue cannot be relitigated in this Court.* See Baldwin v. Iowa State Traveling Men's Association, 283 U.S. 522, 525-526 (1931) (adjudication of personal jurisdictional issue precludes subsequent relitigation of same issue); Deckert v. Wachovia Student Financial Services, 963 F.2d 816, 817 (5th Cir. 1992); Kendall v. Overseas Development Corp., 700 F.2d 536, 538 (9th Cir. 1983). (emphasis added).
> Id. at 341.

In Baldwin, supra, the United States Supreme Court explained the reason for applying res judicata to bar relitigation of state court issues in the federal courts:

6

Public policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties. *We see no reason why this doctrine should not apply in every case where one voluntarily appears, presents his case and is fully heard, and why he should not, in the absence of fraud, be thereafter concluded by the judgment of the tribunal to which he has submitted his cause.* (emphasis added).
Id. at 526-527.

See also, Eaton v. Weaver Manufacturing Co., 582 F.2d 1250 (10th Cir. 1978).

Thus, plaintiff should not be allowed to re-litigate the same issue already decided by the state court, and the Complaint should be dismissed.

**B.   Another of Plaintiff's Suits Had Just Been Dismissed by This Court on the Same Grounds Raised by MIDLAND.**

In Alliance Shippers, Inc. v. Blue Line Distribution, Ltd., 2010 U.S. Lexis 73959 (D.N.J. 2010), United States District Judge William J. Martini, citing Kitces, dismissed ALLIANCE's Complaint after it had been previously been dismissed by a state court on comity grounds. The Blue Line decision was decided and filed on July 22, 2010. Plaintiff's Federal Complaint (Doc. 1) herein is date-stamped "Received July 23, 2010" -- the very next day after the Blue Line dismissal. The Blue Line decision is highly relevant because plaintiff ALLIANCE and its same counsel are once again before this Court under remarkably similar circumstances. They were obviously cognizant of the res judicata doctrine when they filed the Federal Complaint herein, only one day after the Blue Line dismissal.

In Alliance Shippers v. Blue Line Distribution, supra, the defendant had filed suit against ALLIANCE in Canada for breach of contract. Id. at *1. ALLIANCE responded by filing suit against Blue Line in a New Jersey state court. Id. Blue Line moved to dismiss the New Jersey state court action on comity grounds. Id. After Blue Line's comity dismissal motion

7

was granted by the New Jersey state court, ALLIANCE, just as it did here, re-filed the very same action in this Court. Id. at *3. Blue Line moved again to dismiss the case based on res judicata. Id. District Judge Martini granted Blue Line's motion and held that ALLIANCE could not re-file its defunct state court action in this Court:

> [T]he Superior Court considered the substantive issues of whether to apply the doctrine of comity, and its dismissal was clearly on the merits. Accordingly, the Court must give full faith and credit to the Superior Court's judgment. *That Alliance is unsatisfied with the result in the State Court Action does not entitle it to now bring the same matter to federal court and hope for a better result.* See, Montana v. United States, 440 U.S. 147, 153-154, 99 S.Ct. 970, 59 L.Ed. 2d 210 (1979). That the Superior Court's dismissal was without prejudice does not change this Court's analysis. See, e.g. Kitces v. Wood, 917 F.Supp. 338, 341 (D.N.J. 1996). (emphasis added). Id. at *6.

Despite District Judge Martini's above decision the day before ALLIANCE and its counsel filed this action, they are still playing the same improper litigation game in hopes of wearing MIDLAND down. Such tactics should be countenanced.

**C.    Plaintiff's Attempt to Distinguish the Above Cases as Based on Diversity Jurisdiction is Meritless.**

Plaintiff contends (Exhibit "H" hereto) that the above cases can be distinguished on the ground that this Court was sitting in diversity jurisdiction and required to apply New Jersey personal jurisdiction law. Plaintiff argues that subject matter jurisdiction in this case is based, instead, on federal law and, thus, the Court should apply a different standard of personal jurisdiction than the New Jersey courts follow. Plaintiff's argument is baseless.

First, whether in a diversity case or a case arising under federal law that does not provide for national service of process, personal jurisdiction must be determined according to the

law of the forum state.[2]  Max Daetwyler Corp. v. Meyer, 762 F.2d 290, 295 (3d Cir.), cert.

denied, 474 U.S. 980, 106 S. Ct. 383, 88 L. Ed. 2d 336 (1985); CFMT, Inc. v. Steag Microtech,

Inc., 965 F. Supp. 561, 565 (D. Del. 1997); Narco Avionics, Inc. v. Sportsman's Market, Inc.,

792 F. Supp. 398, 402 (E.D. Pa. 1992) [citing Omni Capital Int'l v. Rudolph Wolff & Co., Ltd.,

484 U.S. 97, 105, 108 S.Ct. 404, 410, 98 L.Ed.2d 415 (1987)].  See also, Smith v. S&S Dundalk

Eng'g Works, Ltd., 139 F. Supp. 2d 610, 616-17 (D.N.J. 2001) ["Accordingly, this Court must

undertake the traditional Fourteenth Amendment jurisdictional analysis under New Jersey's long-

arm statute"].

Second, federal courts sitting in diversity and those exercising federal subject

matter jurisdiction alike must apply New Jersey law with respect to claim and issue preclusion[3].

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal courts to "give the same

preclusive effect to a state-court judgment as another court of that State would give." Parsons

Steel, Inc. v. First Alabama Bank, 474 U.S. 518, 523, 88 L. Ed. 2d 877, 106 S. Ct. 768 (1986);

accord Matsushita Elec. Industrial Co. v. Epstein, 516 U.S. 367, 373, 134 L. Ed. 2d 6, 116 S. Ct.

873 (1996);  Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380-381,

84 L. Ed. 2d 274, 105 S. Ct. 1327 (1985).

---

[2] New Jersey Court Rule 4:4-4(b)(1) has been construed as vesting New Jersey courts with jurisdiction over non-residents to the outer limits permitted by due process.  Aydel Corporation v. Mecure, 58 N.J. 264, 268 (1971) ["In other words, we will allow out-of-state service to the uttermost limits permitted by the United States Constitution…In determining those limits we look first to the rulings of the United States Supreme Court"]; Reliance Nat. v. Dana Transport, 376 N.J. Super. 537,543 (App. Div. 2005).

[3] Even if the federal courts were not required to apply New Jersey law, the result would be the same as the New Jersey standard for issue preclusion is identical to the federal standard.  See Del. River Port Auth, v Fraternal Order of Police, 290 F.3d 567, 574 n. 10 (3d. Cir. 2002) [characterizing New Jersey's res judicata formulation and its own as "almost identical"];  see also Gannon v. American Home Products, Inc., 414 N.J. Super. 507, 531 (App. Div. 2010)["We are convinced that the congruence of the federal principles regarding issue preclusion, and those of our state jurisprudence, eliminate any choice of law distinction"].

If ALLIANCE had re-filed its dismissed action in another New Jersey court, that court would have promptly dismissed the re-filed action as barred by issue preclusion. "Collateral estoppel . . . represents the branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action." Tarus v. Borough of Pine Hill, 189 N.J. 497, 520, 916 A.2d 1036 (2007) [quoting Sacharow v. Sacharow, 177 N.J. 62, 76, 826 A.2d 710 (2003)] (emphasis added).

ALLIANCE was obviously a party to the previous identical state court action that it filed against MIDLAND.  Consequently, plaintiff had an opportunity to and, in fact, did litigate the issue of personal jurisdiction over defendant in the dismissed prior state court action. Plaintiff even conducted discovery on that issue.  The state court, however, decided the exact same personal jurisdiction issue against plaintiff that it now wants to relitigate in this Court.  It is obvious that plaintiff could not re-file a jurisdictionally-deficient state court action in this Court.

**D.   Plaintiff's Argument that MIDLAND Waived Its
      Jurisdictional Defense is Meritless.**

ALLIANCE further contends that MIDLAND waived personal jurisdiction by filing a Counterclaim.  Plaintiff's argument is meritless as a matter of law.  Rates Technology Inc. v. Nortel Networks Corp., 399 F.3d 1302 (3d Cir. 2005) [asserting counterclaim does not waive a party's objection to personal jurisdiction].

As it is clear that issue preclusion bars plaintiff's action, the Complaint must be dismissed.

## POINT II

### PLAINTIFF'S COMPLAINT MUST BE DISMISSED BECAUSE THE STATE OF NEW JERSEY LACKS PERSONAL JURISDICTION OVER DEFENDANT

The State of New Jersey does not have personal jurisdiction over defendant MIDLAND because sufficient minimum contacts do not exist for this Court to exercise jurisdiction. It is a plaintiff's burden to demonstrate a basis for personal jurisdiction in response to a challenge by a defendant. See Stranahan Gear Co. v. N.L. Indus., Inc., 800 F.2d 53, 58 (3rd Cir. 1986). ALLIANCE cannot demonstrate such a basis for personal jurisdiction over this defendant. Therefore, the Complaint must be dismissed.

Personal jurisdiction must be determined according to the law of the forum state. Max Daetwyler Corp. v. Meyer, 762 F.2d 290, 295 (3d Cir.), cert. denied, 474 U.S. 980, 106 S. Ct. 383, 88 L. Ed. 2d 336 (1985). New Jersey Court Rule 4:4-4(b)(1) has been construed as vesting New Jersey courts with jurisdiction over non-residents to the outer limits permitted by due process. Aydel Corporation v. Mecure, 58 N.J. 264, 268 (1971) ["In other words, we will allow out-of-state service to the uttermost limits permitted by the United States Constitution...In determining those limits we look first to the rulings of the United States Supreme Court"]; Reliance Nat. v. Dana Transport, 376 N.J. Super. 537,543 (App. Div. 2005).

In the seminal case of Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945), the United States Supreme Court sets forth the parameters of personal jurisdiction under the due process clause, stating that due process requires that a defendant who does not have a presence in the forum, must have certain minimum contacts with the forum state such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Id. Minimum contacts requires, "that there be some act by which the defendant purposefully avails itself of the

11

privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws. Id. at 319.

The United States Supreme Court clarified that the "minimum contacts" test serves two purposes. World Wide Volkswagen v. Woodson, 444 U.S. 286 (1980). First, to protect a defendant against litigating in an inconvenient forum which requires that "maintenance of the suit 'not offend traditional notions of fair play and substantial justice." Id. at 291-292. Second, to ensure that States do not exceed their jurisdictional limits under the federal system. Id. This purpose "has been relaxed substantially over the years" because of the "fundamental transformation in the American economy." Id. at 292-293. Notwithstanding the above, the minimum contacts test remains the preliminary requirement for establishing jurisdiction under the due process analysis. Id. at 294.

Essential to the minimum contacts requirement of the due-process analysis is the question whether the defendant should reasonably anticipate being haled into court in the forum state. Burger King. Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). The record must demonstrate that the defendant has purposefully availed themselves of the privilege of engaging in activities within the forum state, thereby gaining the benefits and protections of its laws. Id. at 475. This was defendants are protected against being haled into court in a foreign jurisdiction solely on the basis of random, fortuitous, or attenuated contacts or as a result of unilateral activity of some other party. Id.

Only if the court finds that a defendant has purposefully established minimum contacts within the forum state can it proceed to the next requirement of the due process analysis. The second requirement analyzes other factors, such as the State's interest in adjudicating the lawsuit and the plaintiff's interest in obtaining relief which is weighed against the sufficiency of

the contacts to determine if jurisdiction would be consistent with the notion of fair play and substantial justice. Those factors may even "serve to establish the reasonableness of jurisdiction upon a lesser showing of jurisdiction that otherwise would be required." Id. at 477.[4]

In Asahi Metal Indus. Co., Ltd. v. Superior Court of California, 480 U.S. 102, 108-109 (1987), the Supreme Court affirmed the rule that the substantial connection between the defendant and the forum state necessary for a finding of minimum contacts "must come about by an action of the defendant purposefully directed toward the forum State." Id. In addition, the Supreme Court stated that when the suit involves an alien defendant, a court must be "unwilling to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or forum State. Id. at 115.

In accord with Int'l Shoe Co., supra, and its progeny New Jersey courts apply the minimum contacts test to determine whether jurisdiction exists over a non-resident defendant. This requires a case-by-case analysis of a defendant's relationship with the forum state to satisfy the jurisdictional requirements of due process. Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 122 (1994). This is a two part analysis. The first part is to determine if minimum contacts exist at all. Id. This ensures that a state's grasp does not exceed its jurisdictional reach while protecting the primary goal of preserving that a defendant is not subject to judgment in which they have no minimum contact. Id. (citing Gendler & Co. v. Telecom Equip. Corp., 102 N.J. 460, 471 (1986)). The second part is only reached if minimum contacts exist. Id. at 124. Only if minimum contacts exist may the court weigh the sufficiency of the contacts against the

---

[4] Defendant MIDLAND submits that this Court's analysis of personal jurisdiction does not go beyond the preliminary question of minimal contacts. Assuming, arguendo, that plaintiff establishes minimal contacts, the relationship between the defendant, the forum state and the litigation are not consistent with considerations of fair play and substantial justice. Defendant is a California company that contracted with ALLIANCE, who is also located in California. Therefore, New Jersey has no interest in adjudicating the lawsuit involving this defendant.

relationship between the defendant, the forum state and the litigation. Id. at 123 (citing Shagger v.Heitner, 433 U.S. 186, 204 (1977)).

MIDLAND's only contact with New York is that it has a registered agent for service of process in New York. Such limited contact is insufficient to establish personal jurisdiction over it. See Metropolitan Life Insurance Company v. Robertson-CECO Corp., 84 F. 3d 560, 570 (2nd. Cir. 1996) [citing Sandstrom v. Chemlawn Corp., 904 F.2d 83,89 (1st Cir. 1990) [ a mere license to do business and designation of agent for service of process within the forum state is insufficient to confer general jurisdiction]. "There is no talismanic significance to any one contact or set of contacts that a defendant may have within the forum state; courts should assess the defendant's contacts as a 'whole' to determine whether they constitute the kind of continuous and systematic contacts required to satisfy due process." Id. at 570, 571.

In this case, there are no other contacts between MIDLAND and the State of New Jersey. MIDLAND is located at 1115 S. Taylor Avenue, Montebello, CA 90640. The contract it entered into with the plaintiff occurred in California. MIDLAND never availed itself to any benefits from the State of New Jersey that would make it reasonable for them to anticipate being haled into court here. This defendant is unable to identify any customers that maintained a business location in New Jersey (except to the extent that plaintiff now alleges it maintained a business location in New Jersey) to which it either received and/or sold or delivered any types of goods and/or services; this defendant does not have any persons and/or entities that have a residence or business location in New Jersey that have acted as sales representatives and/or agents on its behalf; this defendant has never placed advertisement in a newspaper, magazine and/or trade publication and any other circulated or media in New Jersey; this defendant has not attended any trade shows, conventions, seminars/training sessions or any other type of meetings

that were held in New Jersey; this defendant has had hundreds of customers over the past six years, most of whom have been located in southern California or shipping to and/or from southern California; this defendant has never purchased any services from individuals located at plaintiff's New Jersey offices; this defendant entered into a contract in California and/or Illinois, specifically, all of plaintiff's representatives were located in the Chicago area and this defendant's representatives were located in California, and the setting up of transportation of shipments form southern California to the Chicago area.

Under these circumstances, the exercise of jurisdiction would not be consistent with the considerations of "fair play and substantial justice" and would exceed the jurisdictional limits of this Court. See Waste Mgmt., Inc., 138 N.J. 106 (1994). Therefore, a finding of personal jurisdiction over MIDLAND would violate its due process rights.

## POINT III

### THIS MATTER SHOULD BE DISMISSED BASED UPON THE DOCTRINE OF FORUM NON CONVENIENS

The essence of the doctrine of forum non conveniens is that, a court may decline jurisdiction whenever the ends of justice indicate a trial in the forum selected by the plaintiff would be inappropriate. See BOC Group, Inc. v. Chevron Chemical Company, L.L.C., 359 N.J.Super. 135 (App.Div. 2003). The application of the doctrine is left to the discretion of the court, and factors of private interest of the litigants, as well as factors of public interest, are to be considered. Civil Southern Factors Corp. v. Bonant, 65 N.J. 329 (1974). According to the Appellate Division in First England Funding, L.L.C. v. Aetna Life Insurance & Annuity Co., 347 N.J.Super. 443 (App.Div. 2002), these factors were summarized in Mandell v. Bell Atl. Nynex Mobile, 315 N.J.Super. 273 (Law Div. 1997) as follows:

15

> [T]he private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining the attendance of willing witnesses; (4) the possibility of viewing the premises; and (5) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest from having localized controversies decided at home; (3) the interest of having a trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws or the application of foreign law, and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

See First England, 347 N.J.Super. 443 (App.Div. 2002).

Based on the record, the private interest in having this matter litigated in California clearly outweighs that of New Jersey. California is more appropriate forum for this case to be heard, given the fact that both of the parties have a presence in California and, whereby, fact witnesses would be present in California and subject to compulsory process. Further, the cost of obtaining the attendance of willing witnesses would be significantly reduced in California, as these witnesses would have far less distance to travel.

As to the public interest factor, it is clear that a New Jersey court and jury would have to listen to residents of California testify to events that transpired, and then apply these facts to the laws of California.

Notwithstanding the above factors, the determination as to the proper forum is not only to be arrived at by a simply balancing test of convenience. The court must also consider whether the plaintiff's choice of forum is "demonstrably inappropriate and designed to subject the defendant to harassment and vexation." See Madan-Russo v. Poasda, 366 N.J.Super. 420 (App.Div. 2004). As set forth herein, it is clear that New Jersey is a "demonstrably inappropriate" forum for this matter. See id. Not only did the alleged breach of contract not

16

occur in New Jersey, but New Jersey's only real connection with this matter is that the plaintiff has some branches of its corporation in New Jersey.  Moreover, plaintiff's choice of forum is clearly a move to inconvenience MIDLAND's defense of this matter.

Based on the foregoing, it is respectfully requested that plaintiff's Complaint be dismissed pursuant to the doctrine of forum non conveniens.

**POINT IV**

**NO FEDERAL SUBJECT-MATTER JURISDICTION
EXISTS OVER THIS FREIGHT CHARGE SUIT**

**A.  Plaintiff's Claim for Freight Charges Does Not Arise Under Federal Law.**

Plaintiff alleges subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337. However, this Honorable Court and other District Courts have held that neither Section 1337 nor any other statute provides federal subject matter jurisdiction over motor carrier freight charge claims.  Mayflower Transit, LLC v. Interra Industries, 2008 U.S. Dist. Lexis 50121 (D.N.J. 2008); Central Transport Intl. v. Sterling Seating, Inc., 356 F.Supp.2d 786 (E.D.Mich. 2005); Transit Homes of America v. Homes of Legend, Inc. ("Transit Homes I"), 173 F.Supp. 2d 1185 (N.D. Ala. 2001); Transit Homes of America v. Homes of Legend, Inc. ("Transit Homes II"), 173 F.Supp.2d 1192 (N.D. Ala. 2001).

In Transit Homes I, the court rejected plaintiff's contentions that its freight charge claim arose under the Carmack Amendment, 49 U.S.C. § 14706; (ii)  "the Interstate Commerce Act ("ICA") generally 49 U .S.C. § 10101 et seq., and (iii)  under 49 U.S.C. § 14101(b).  It explained its reasoning as follows:

> First, the Court determined that, although issues relating to the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, might be litigated in the case, it could not be said that Morgan's claim, as a carrier against a shipper for unpaid freight charges, "arises under" that statute, which by its terms outlines

17

only a shipper's remedy against a carrier under a receipt or bill of lading for loss or damage to the property transported. Second, responding to Morgan's assertion that subject matter jurisdiction exists by virtue of a federal right and obligation to collect unpaid freight charges, the Court reasoned that following the substantial deregulation of the trucking industry in the Mid 1990's, no such right or duty is vested in a motor carrier where, as here, there is no applicable filed tariff. Rather, the Court explained, any right that Morgan had to collect charges owed to it springs solely from its contract with HOL. Finally, Morgan asserted that such contract was expressly authorized under 49 U.S.C. § 14101(b)(1) and that subsection (b)(2) of that section conferred original jurisdiction to hear a breach of such a contract. The Court acknowledged that § 14101(b)(1) allowed the parties to contract for transportation, but the Court disagreed that § 14101(b)(2) was an affirmative grant of federal jurisdiction for purposes of 28 U.S.C. § 1337. And because the Court determined that subject matter jurisdiction was lacking, it dismissed the action and instructed Morgan that it might file its action in a state court.

Transit Homes II at 1194.

In Transit Homes II, the court reiterated that 49 U.S.C. § 14101(b)(1) and (2) did not create federal jurisdiction for freight charge claims. Id. at 1199.   The court also easily rejected plaintiff's reliance on 49 U.S.C. § 13707 as an independent source of federal jurisdiction. The court explained that it "is commonly understood that those provisions [section 13707] merely prevented certain carriers from extending credit except upon conditions prescribed by regulation." Id.   The courts in Mayflower Transit and Central Transport similarly held that because the plaintiffs were not seeking amounts due under a filed tariff, no federal question existed. Cf. Old Dominion Freight Line v. Allou Distribs., 86 F.Supp.2d 92 (E.D.N.Y. 2000).

Indeed, similar suits filed by plaintiff's counsel herein on behalf of other parties were recently dismissed by other federal courts. See, GMG Transwest Corp. v. PDK Labs, 2010 U.S. Dist. Lexis 95941 (E.D.N.Y. 2010); Alliance Shippers, Inc. v. Starrett, Civil Action No. 10-198-P-H, (D.Me. 2010) [see copy of the Decision and Order on Motion to Dismiss, dated October 7, 2010; Exhibit "I").

Thus, MIDLAND respectfully requests that the Complaint be dismissed for lack of subject matter jurisdiction.

**B.  The Complaint May Also Be Barred By The Rooker-Feldman Doctrine.**

Plaintiff's suit is precluded under the Rooker-Feldman doctrine, which provides that "lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463, 126 S. Ct. 1198, 163 L. Ed. 2d 1059 (2006). Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction over "federal complaints . . . [that] essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments." Exxon Mobil Corporation v. Saudi Basic Industries Corporation, 544 U.S. 280, 125 S. Ct. 1517,1521, 161 L. Ed. 2d 454 (2005); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 75 L. Ed. 2d 206, 103 S. Ct. 1303 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413, 68 L. Ed. 362, 44 S. Ct. 149 (1923). In Exxon Mobil, the Supreme Court addressed the scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. at 284.

Under Exxon Mobil, the Rooker-Feldman doctrine applies when the losing party in state court files suit in federal court "after the state proceedings ended." 125 S. Ct. at 1526.

Here, plaintiff ALLIANCE is clearly asking this Court to negate the state court's order dismissing plaintiffs' complaint for lack of personal jurisdiction.  Instead of appealing the decision to the state court appellate division, it is appealing to the federal court.  Further, as the state court appeal was not pursued, but rather abandoned immediately after the filing of the

19

instant suit, the January 8, 2010 state court order dismissing the action was for all practical matter the end of the state court action.

> Generally speaking, state proceedings will have "ended" in three situations…
>
> Second, **if the state action has reached a point where neither party seeks further action, then the state proceedings have also "ended."** For example, if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended…under *Exxon Mobil*'s "ended" test. (emphasis added).
> Federacion De Maestros De Puerto Rico v. Junta De Relaciones Del Trabajo Del Puerto Rico, 410 F.3d 17, 24 (1st Cir. 2005).

Thus, the Rooker-Feldman doctrine precludes federal jurisdiction over this action.

## **CONCLUSION**

It is respectfully requested that defendant MIDLAND WEST, INC.' s motion to dismiss the plaintiff, ALLIANCE SHIPPERS, INC.'s, Complaint on the grounds that it is (i) barred by Fed.R.Civ.P. 12 (b)(6) as a result of the prior jurisdictional dismissal of plaintiff's identical state court action, (ii) for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12 (b)(2) and (iii) for lack of subject-matter jurisdiction under Fed.R.Civ.P. 12 (b)(1), be granted.

Dated: January 14, 2011

_____
NARINDER S. PARMAR